## LOUISIANA RY. & NAV. CO. v. FOSTER.
### (No. 3536.)

Court of Civil Appeals of Texas. Texarkana. March 28, 1928.

Rehearing Denied April 19, 1928.

1. **Appeal and error ⟨⟩1002—Appellate court may not disturb verdict of jury as to amount of damages based upon conflicting evidence.**

Where evidence respecting extent of injury is conflicting, appellate court may not disturb verdict of jury as to amount of damages awarded.

2. **Trial ⟨⟩351(5)—Requested issues may be refused where special issues submitted sufficiently covered all pertinent issues.**

Where special issues submitted sufficiently covered all pertinent issues, held there was no reversible error in refusing special instructions and issues requested.

3. **Master and servant ⟨⟩286(30)—Negligence of section foreman in running motorcar in reverse at high rate of speed causing car to jump track and injure section hand, held for jury.**

In section man's action for injuries sustained when motorcar jumped track, negligence of foreman in running car in reverse at high rate of speed around curve held for jury.

4. **Master and servant ⟨⟩288(2)—Whether section man injured when riding on motorcar which jumped track assumed risk held for jury.**

In section man's action for injuries sustained while riding on motorcar which jumped track, whether he assumed the risk held for jury.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Suit by R. A. Foster against the Louisiana Railway & Navigation Company. Judgment for plaintiff, and defendant appeals. Affirmed.

B. M. McMahan, of Greenville, Jones & Jones, of Mineola, and Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

J. H. Beavers, of Winnsboro, and H. L. Wilkinson, of Quitman, for appellee.

LEVY, J. The suit was brought by appellee to recover damages for personal injuries claimed to have been received by him on September 8, 1925, through the derailment of a motorcar on which he and two other members of the section crew were being transported to their special place of work. The section foreman was operating the motorcar at the time. The pleaded grounds of negligence causing the derailment are, in substance: (1) The running of the motorcar in reverse, or backward, at a high and dangerous rate of speed by the section foreman; and (2) the falling of a jack, negligently placed on the end of the motorcar, on the track in front of the motorcar, which jack was caused to fall by reason of the car's being run in reverse at a high rate of speed on a curve in the track. The defendant specially pleaded assumed risk, contributory negligence, unavoidable accident, prior injuries and disease of plaintiff, and aggravation of his injuries received in the derailment in consequence of neglectful treatment thereof.

The following are, in substance, the facts proven: The appellee, a married man about 35 years old, was employed as a section hand in June, 1925, and continued in such employment until the date of injury on September 8, 1925. He was a member of the section crew stationed at Winnsboro. The section extended five miles east and west of Winnsboro. There was provided for the use of the section crew a gasoline motorcar, which, as appears, was a flat car about four feet in length. It could be operated forward or in reverse. That particular car had been in use on the section "about 12 years." The car was so constructed, as testified by the foreman, as to have "one wheel on the car that was loose on the axle." It was so, as he says, "for the purpose of rolling it off and on the track, to make it easy so that we could get it off the track." There was some evidence that the flange was worn and "gaps broken in the flange" on some of the wheels, but there was also evidence in denial of such condition. The car was used as a vehicle to transport the crew and the tools of the crew to and from places of work. At the noon hour of the day in question the car was placed on the canning factory spur track at Winnsboro. It was loaded with the usual tools used by the crew, including an iron jack used for raising rails in track repair. The jack was situated on the end of the car, facing west. At 12:45 p. m. of the day in question the section foreman, with the appellee and one other section hand, got on the car to go to the pumping station, about one mile

west of Winnsboro, to do the special work there of unloading coal from a car. The appellee was on the end of the car, facing east. The section foreman operated the car. The car was operated towards the west, in reverse or backward. Upon reaching a point less than half a mile from the starting point the car was suddenly derailed, scattering the tools and causing all three of the crew to fall violently to the ground. All the members of the crew, including the foreman, were rendered unconscious by the fall due to the derailment. The above facts appear practically undisputed. All the witnesses agree that the car was derailed. The cause of the derailment, however, rests in inference from the facts and circumstances in evidence. There is no positive evidence of the precise cause. According to the testimony in behalf of the appellee, when the car was started on the main line track, operated in reverse, the section foreman continued to increase the rate of speed until it reached the rate of about 30 miles an hour, and was running at that rate of speed at the time of the derailment. The evidence in behalf of the appellant goes to show a rate of speed of less than 30 miles an hour. The foreman testified that 15 or 18 miles an hour was the highest rate of speed "the car was capable of making." The foreman further stated:

"I don't remember for sure what rate of speed I was operating the motorcar over the crossing and going west after I passed the crossing. I don't remember how fast the car was running at the time of the wreck."

A freight train was at Winnsboro ready to go west, and the proof shows that the section foreman wanted to reach the pumping station ahead of the freight train. Thus the evidence as to the rate of speed of the car at the time of derailment is conflicting. It further appeared that at a point east of and before reaching the place of derailment is a road crossing. As stated by the foreman, and corroborated by other evidence, viz.—

"After crossing over the road crossing, going west, the track is slightly down grade for maybe a hundred yards, and then it took a slight up grade. There is a curve (in the railway track) somewhere above the crossing, going west. I have never measured the distance from the crossing up to that curve. I couldn't say for sure whether or not I cut off the switch (on the motorcar) as I approached the dirt road crossing on that day. I can't say I remember it. I don't remember for sure what rate of speed I was operating the motorcar over that crossing, going west, after I passed over the crossing. * * * The wreck occurred right about the point of the curve; right on the point of the curve."

The appellee further offered circumstances tending to show that the jack fell off the car and in front of it as it started on the curve, causing the derailment. There is no positive evidence in that respect, and inferences are alone relied upon. The circumstances all have probative force and strongly support the inference that the derailment was the immediate and direct consequence of operating the car at a fast rate of speed at the place of derailment. It was an act of negligence on the part of the section foreman in so doing under the circumstances as found by the jury. There is positive evidence to show that the appellee was grievously injured as a direct result of the derailment. The evidence as to the extent of the injury is conflicting.

The case was submitted to the jury on special issues. The special findings of the jury are, in substance, as follows: (1) That the section foreman was operating the motorcar in reverse and at an unusual and dangerous rate of speed at the time of the derailment, and that in so doing he was guilty of negligence, under the circumstances, proximately causing the injury to the plaintiff. (2) That the plaintiff did not assume the risk of the section foreman's operating the motorcar in reverse, or backward, at the time of the derailment. (3) That the operation of the motorcar under the circumstances, with the jack on the end of the car facing the direction the motorcar was going, was negligence on the part of the section foreman, and that such negligence proximately caused the injury to the plaintiff. (4) That the plaintiff did not assume the risk of the operation of the car with the jack on the front end thereof. The jury further found the plaintiff was injured, and awarded damages in the sum of $15,000. There being evidence to warrant the several jury findings, they are here adopted.

[1] The many assignments of error may be grouped and so considered. The petition was good as against a general demurrer, and there was no error in overruling the special exceptions thereto. There appears no reversible error in relation to objections to introduction of evidence, and the assignments of error from No. 5 to No. 75, inclusive, are overruled. Evidence respecting the extent of the injury is conflicting, and this court may not disturb the verdict of the jury as to amount of damages awarded. The damages are not flagrantly excessive for the injury sustained by the appellee. The trial court was fully warranted in holding that there was no misconduct on the part of the jury. Railway Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

[2] The charge of the court relating to the measure of damages is not, we think, subject to the objection of allowing double damages respecting the matter complained of. And as the special issues submitted sufficiently covered all the pertinent issues, there was no reversible error in refusing the special instructions and issues requested, as appears in assignments of error Nos. 91 to 103 inclusive.

[3] It is believed that there is ample evidence to establish actionable negligence on

the part of the section foreman in the manner of operating the motorcar under the special circumstances, and therefore the various assignments of error in that respect should all be overruled. The derailment immediately occurred, as admittedly shown, as the wheels of the motorcar started to take the curve in the track. At that precise time, according to the evidence of several witnesses, the motorcar was being operated in reverse at the rate of about 30 miles an hour. It plainly was not a happening without fault of any one or without any reasonable cause therefor. While negligence per se may not be rested on the mere act of running the car in reverse, yet in so doing at a high rate of speed at the curve in the track it may, as within the province of the jury to say, constitute negligence on the part of the foreman. The trial court has correctly based negligence, not merely upon rate of speed or running in reverse, but upon so doing under the circumstances.

[4] The jury made the finding that the appellee, under the circumstances, did not assume the risk of injury through riding on the car, and it is thought that this court may not say as a pure matter of law that appellee is precluded from recovery by reason of the doctrine of assumed risk.

We have considered each one of the assignments of error, and think they should be overruled as not warranting a reversal of the judgment.

The judgment is affirmed.